**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 20 2014, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN F. DONALDSON**
Mercho Donaldson, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WESTPORT HOMES, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A01-1403-SC-120 |
| | ) | |
| GREG PENLEY and PAM PENLEY, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE HANCOCK SUPERIOR COURT
The Honorable R. Scott Sirk, Commissioner
Cause No. 30D02-1310-SC-1089

**August 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Greg and Pam Penley signed a home construction contract with Westport Homes, Inc., that provided for a set of complimentary kitchen appliances to be included with the purchase of their home. The Penleys then contracted with Westport to upgrade those appliances sight unseen. Westport installed the appliances, and the Penleys saw them for the first time during a walk-through a week before closing. An unspecified issue with the appliances was noted on a customer orientation form, and prior to closing Greg signed an acknowledgement that the issue had been resolved to his satisfaction. Two weeks after closing, the Penleys told Westport that they were dissatisfied with the refrigerator because the right door, which was adjacent to a wall, opened less than ninety degrees. Westport proposed that they either keep the refrigerator or exchange it at an appliance store and either receive a credit or pay the difference for a more expensive refrigerator. The Penleys rejected the proposal and filed a claim for $1081 against Westport in small claims court. After a trial, at which Greg appeared pro se and Westport appeared by counsel, the trial court entered judgment in favor of the Penleys for that amount.

On appeal, Westport contends that the Penleys' only conceivable theory of recovery is for breach of contract and that they failed to establish either a breach or $1081 in damages by a preponderance of the evidence. Because the Penleys did not file an appellee's brief, Westport must establish only that the trial court committed prima facie error. We conclude that Westport has carried this burden with respect to both breach and damages. Therefore, we reverse and remand with instructions to enter judgment in favor of Westport.

**Facts and Procedural History**

The facts most favorable to the trial court's judgment are that in January 2013, the Penleys signed a purchase agreement with Westport for the construction of a home in New Palestine. The purchase agreement provided for a set of complimentary kitchen appliances consisting of a range, dishwasher, microwave, and refrigerator. In February 2013, the Penleys signed a change order request for an upgraded kitchen appliance package for an additional $925. According to Greg, he and Pam did not see a picture of the upgraded refrigerator or ask about its size or whether it had "side-by-side" doors. Tr. at 24. He "figured [they] would get what [he was] looking for. The old left to right opening refrigerator." *Id*.

Westport installed the upgraded appliances in the Penleys' home. The Penleys did not see the refrigerator, which had side-by-side doors, until they "did [their] final walk through in the house" on May 8, 2013. *Id*. at 16. On that date, Greg signed a customer orientation form that states, "I/we agree to accept the home with the above mentioned exceptions. I/we understand that all items will be complete at the pre-closing meeting," which was scheduled for May 15. Appellant's App. at 11. One of the handwritten exceptions was "Appliances." *Id*. On May 15, Greg signed an acknowledgement on the customer orientation form that states, "I/we here by [sic] acknowledge that all items listed above (with the exception of weather related items) have been completed to our satisfaction." *Id*.

On June 1, 2013, the Penleys informed Westport that they were dissatisfied with the refrigerator, which was "very nice" but not "practical." Tr. at 24, 17. According to Greg,

3

"The problem is you can't open [the right] door because it's against the wall.  When that door is open, you have ten and a half inches.  You literally have to reach into the back, turn sideways to get into the refrigerator."  *Id*. at 17.  The right door opened less than ninety degrees, and therefore the crisper drawers could not be removed for cleaning without pulling the refrigerator away from the adjoining cabinets and rotating it.  In an email, Westport told Greg that he could either keep the refrigerator or exchange it for another refrigerator at an appliance store "and receive a credit and/or pay the difference."  Plaintiffs' Ex. 2.  The appliance store offered the Penleys a credit of $687 for their refrigerator but would have charged $80 to retrieve it and deliver a new one.  The Penleys were dissatisfied with Westport's proposal and filed a claim against Westport in small claims court for $1081.

At trial, Greg appeared pro se, and Westport was represented by counsel.  Greg talked about the foregoing events and submitted several exhibits.[1]  Westport's counsel questioned Greg and also submitted several exhibits.  During Greg's case-in-chief, the following exchange occurred:

THE COURT:       What – what are – what are you asking for?  You have damages of $1,000.81 [sic].

PLAINTIFF:       Here – here's the deal.  They gave me a range [of prices] at [an appliance store], and I'm sure that's inflated uh when I've got pictures of – of refrigerators right here from all these [appliance stores] that I can get a – I call it an old fashion [sic] regular refrigerator where you'd open left to right, right to left, freezer on top, freezer on bottom.  I don't care.  Anywhere from $800.00 to $1,000.00.

---

[1] We say "talked" instead of "testified" because the court did not place Greg under oath on the record.  *Cf*. Ind. Small Claims Rule 8(B) ("All testimony shall be given under oath or affirmation.").

THE COURT:      So you just – you want to be paid the amount of money that would cover you to get a replacement refrigerator.

PLAINTIFF:      I don't even care if they pay me. I just want a functioning refrigerator that I can get in and out of.

THE COURT:      Well what do you want the Court to do? What do you want the Court to do?

PLAINTIFF:      To rule in my favor.

THE COURT:      Well, then I'm asking you what specifically do you want the Court to rule? Do you want money what or – is that what you're asking for to reimburse that?

PLAINTIFF:      I would – I would like – I would like yeah I'll – I'll money. I would like a refrigerator, but I don't know if they're gonna do that for me.

THE COURT:      Okay.

PLAINTIFF:      I want a just a regular refrigerator, and if I can't do it – the only reason I – I put a thousand dollars is because it seemed like a middle of the road figure from what I was finding.

THE COURT:      And then you would just uh – you would still have the refrigerator you have you'd just get –

PLAINTIFF:      They can have it back. They're wanting to give me a credit. I told them I suggested they put it in a model. Put it in another home.

THE COURT:      You would just – you would just return that refrigerator to Westport?

PLAINTIFF:      Yeah.

THE COURT:      And get a thousand dollars. Okay.

Tr. at 21-22.

The trial court took the matter under advisement and ultimately entered a general judgment in favor of the Penleys for $1000 plus court costs of $81. Westport now appeals.

**Discussion and Decision**

Westport contends that the trial court erred in entering judgment for the Penleys and awarding them $1081. "Typically, we apply a clearly erroneous standard in a review of a small claims court's award of damages, and affirm a general judgment … if it can be sustained on any legal theory supported by the evidence." *Tamko Roofing Prods., Inc. v. Dilloway*, 865 N.E.2d 1074, 1080 (Ind. Ct. App. 2007). Here, however, the Penleys did not file an appellee's brief.

> Where the appellee fails to file a brief on appeal, we may, in our discretion, reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. Prima facie error has been defined as "at first sight, on first appearance, or on the face of it."

*In re Guardianship of Brewer*, 922 N.E.2d 82, 86 (Ind. Ct. App. 2010) (italics and citations omitted). "By requiring the appellant to show some error, we ensure that the court, not the parties, decides the law. By allowing the appellant to prevail upon a showing of only prima facie error, we avoid the improper burden of having to act as advocate for the absent appellee." *C.B. v. B.W.*, 985 N.E.2d 340, 344 (Ind. Ct. App. 2013) (citation omitted), *trans. denied*.

Westport says,

> Because neither the Notice of Claim, the Transcript, nor the trial court's order states any legal theory, it is unclear from the record what legal theory was relied upon by the trial court. Because the relationship between Westport and the Penleys was strictly contractual, Westport can only assume the ruling in favor of the Penleys was based upon a breach of contract.

Appellee's Br. at 11. Based on the record before us, we find Westport's assumption reasonable.[2]

"The elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Murat Temple Ass'n v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128-29 (Ind. Ct. App. 2011), *trans. denied*. The Penleys had the burden of establishing these elements by a preponderance of the evidence. *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). A breach of contract has been defined as a "[v]iolation of a contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance." BLACK'S LAW DICTIONARY 200 (8th ed. 2004). The appropriate measure of damages for a breach of contract is the loss actually suffered as a result of the breach. *City of Jeffersonville v. Envtl. Mgmt. Corp.*, 954 N.E.2d 1000, 1015 (Ind. Ct. App. 2011). "The non-breaching party is not entitled to be placed in a better position than it would have been if the contract had not been broken." *Id*.

Westport observes that it provided the Penleys "with the exact appliance package and [r]efrigerator the Penleys had requested" in the change order. Appellant's Br. at 10. Westport contends that the Penleys' mere dissatisfaction with the refrigerator is a claim "not supported by any legal theory" and that, "even if it were determined that a breach occurred,

---

[2] There is no indication that the Penleys intended to bring a claim under the Indiana Uniform Commercial Code or a breach of warranty claim. Because they did not file an appellee's brief, we decline to make any such claims on their behalf.

7

the Penleys did not suffer any damages" because "[t]hey received the exact set of appliances they had requested" in the change order. *Id*. Westport points out that the trial court's award is "greater than the amount [the Penleys] initially paid" to upgrade all four appliances[3] and argues that allowing them to keep the appliances and award them $1081 "puts them in a better position than they otherwise would have been." *Id*.

To summarize, the Penleys contracted to purchase the upgraded appliances sight unseen, and Westport installed them as promised. The Penleys had an opportunity to view (and, presumably, open the doors of) the refrigerator during their final walk-through of the home, and prior to closing Greg acknowledged in writing that the unspecified issue with "Appliances" had been resolved to his satisfaction. Based on the foregoing, we conclude that Westport has established, prima facie, that the Penleys failed to show by a preponderance of the evidence that Westport breached any contract with them regarding the refrigerator and that they suffered any damages. Therefore, we reverse and remand with instructions to enter judgment in favor of Westport.[4]

Reversed and remanded.

RILEY, J., and MATHIAS, J., concur.

---

[3] To be more precise, Westport argues that the trial court's award "is greater than the amount [the Penleys] initially paid for all of the Requested Appliances ($925.00)." Appellant's Br. at 10. This was the amount that the Penleys paid to *upgrade* the appliances; obviously, Westport must have factored the price of the "base" appliances into the original cost of the Penleys' home.

[4] Even assuming the existence of a breach and damages, we would find the damages award excessive, especially since the trial court did not order the Penleys to return the refrigerator to Westport. Moreover, we note that the Penleys contracted to purchase the refrigerator that was actually installed, not a more expensive model that might have been better suited for the space. At trial, Greg presented evidence suggesting that Westport no longer offers side-by-side refrigerators in homes with similar floorplans, but the legal significance of this, if any, was for the Penleys to establish on appeal.