

FILED

Jun 23 2016, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

ATTORNEY FOR APPELLEE

Thomas L. Hulse
Hulse Lacey Hardacre & Austin, PC
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Duane Harmon,

*Appellant-Defendant,*

v.

Gary Fisher,

*Appellee-Plaintiff.*

June 23, 2016

Court of Appeals Case No.
48A02-1511-SC-1957

Appeal from the Madison Circuit
Court.
The Honorable Thomas L. Clem,
Judge.
Cause No. 48C05-1506-SC-2332

**Garrard, Senior Judge**

[1] Duane Harmon appeals from the trial court's judgment in a small claims action brought by him alleging false representation made on a real estate sales disclosure form about the condition of certain real estate sold to him by Gary Fisher. Finding that the judgment is not clearly erroneous, we affirm.

[2] Gary Fisher's mother and step-father purchased real estate in Anderson, Indiana in 1976. Fisher never lived in the home, but in games played with children while visiting the house, Fisher and others used a metal lid, which was

located in the yard and marked as a water meter, as home plate. After Fisher's mother and step-father relocated to a nursing home sometime in 2013 or 2014, Fisher paid their bills pursuant to a power of attorney. Among the bills was the Anderson City Utility bill showing charges for city water and sewage services. Believing that the real estate was connected to the city water and sewer system, and, thus that the charge was valid, Fisher paid that bill.

[3] Fisher inherited the real estate upon his mother's death in 2014. Fisher sought to sell the home at auction and had the property appraised. The appraisal showed that the house was connected to public water and sewer services. Ex. Vol. p. 33. The public auction flyer pertaining to the house stated that "[t]he mechanics of the house include city water/sewer." *Id.* p. 46.

[4] The home did not sell at auction, so Fisher listed it with Janice Stinson Real Estate. The real estate listing for the home stated that the primary water source and primary sewage disposal were both connected to the municipality. *Id.* p. 3. Harmon, who was not present at the auction, made a first offer on the house for $25,000. After negotiating, Harmon and Fisher agreed upon a purchase price of $27,000. The seller's residential real estate disclosure form contained a line for disclosure of whether the structures were connected to a public sewer system. The columns allowed responses of yes, no, and do not know. Fisher selected the yes column. In the section answering "Septic Field/Bed" and "Septic & Holding Tank/Septic Mound", the answers that could be chosen were "None/Not Included/Rented", "Defective", "Not Defective", and "Do Not Know". *Id.* p. 12. Fisher answered both questions by selecting

"None/Not Included/Rented". *Id.* When Fisher completed the disclosure form, he believed the property was connected to city sewer services.

[5] After taking possession of the property in April 2015, Harmon attempted to shut off the water to replace some washing machine valves. Harmon removed the water meter cover in the yard and discovered a septic tank. He called a plumber to come to the property and verify that it was not connected to the city sewer system, and after that, paid the expenses associated with having the property connected to the system, including knocking a hole in the basement wall, and excavating, grading, and seeding the yard. By the time of trial, Harmon had sold the property on contract for $46,900.

[6] Harmon filed a notice of small claim on June 23, 2015, and filed his amended complaint on September 22, 2015. The trial was held on October 7, 2015. At the trial, Harmon testified that as an experienced purchaser of homes for resale, having purchased close to seventy-five homes over the years, he would not have considered purchasing the property had he known in advance that it was connected to a septic system. He admitted that he conducted his own thorough inspection of the home. He produced evidence that it cost $3,200 to have the house connected to the city sewer, $225 for landscaping the lawn, $250 for verification of the septic system by the plumber, and a loss of the use of the property valued at $250. Harmon also sought $500 in attorney fees due to the allegation of fraud and misrepresentation in the disclosure form.

[7] Fisher testified that he had never lived in the home and believed that it was connected to both city water and city sewer systems. He stated that he did not provide the information contained in the auction flyer and did not provide information about the water or sewer system to the person who prepared the appraisal. He testified that he had no idea that a home located in the middle of a community where there was sewer service could have a septic tank. The first time Fisher spoke with Harmon was at the closing, at which time they did not discuss the water or sewer systems.

[8] In its order, the trial court concluded that while the real estate was only connected to city water and not city sewer services, Fisher had no actual knowledge that the real estate was connected to a septic system when he made the disclosure on the form.

[9] Harmon now appeals arguing that the trial court's decision is clearly erroneous because the amended complaint alleged fraud and misrepresentation and the evidence establishes Fisher committed constructive fraud. Fisher contends that the argument is being raised for the first time on appeal and is waived.

[10] Under the rules for small claims actions, judgments are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). The Trial Rule 52(A) clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1067 (Ind. 2006). In small claims actions, this

deferential standard of review is important because of the informal nature of the proceedings, whose objective is to dispense speedy justice between the parties according to the rules of substantive law. *Id.* at 1067-68; S.C.R. 8(A). With respect to substantive rules of law, however, our review is de novo just as it is in appeals from courts of general jurisdiction. *Trinity Homes, LLC*, 848 N.E.2d at 1068.

[11] Harmon's notice of small claim indicated that the claim was for "money owed" in the amount of $3,925.00. Appellant's App. p. 5. His amended complaint alleged that attorney fees were sought, in addition to the claim for actual damages, under the statutory remedy for fraud and misrepresentation. *Id.* at 6. The amended complaint further alleged the claim was based on Fisher's certification of actual knowledge that the property did not include a septic tank and septic field in the seller's residential real estate disclosure form. *Id.*

[12] Harmon bore the burden of proof at trial, but did not prevail. As such, he appeals from a negative judgment. *Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012). We will not reverse a negative judgment unless it is contrary to law. *Id.* To make that determination, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *Id.* The appellant must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Id.*

[13]    The sale of the house was governed by the provisions of Indiana's real estate sales disclosure statutes. Ind. Code chapter 32-21-5 (2002). As pertains to the issue here, the disclosure form must contain the known condition of the water and sewer systems. Ind. Code § 32-21-5-7(1)(E) (2014). In this case, the form states that the information in the disclosure is correct to the best of the seller's "CURRENT ACTUAL KNOWLEDGE". Exhibit Vol. pp. 12-13. The form is not a warranty by the owner, and the disclosure form is not to be used as a substitute for any inspections or warranties the buyer or owner may later obtain. Ind. Code § 32-21-5-9 (2002). As applicable to this appeal, in the event the buyer discovers a defect after the sale has been completed, the seller's liability is limited such that the seller "is not liable for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if the error, inaccuracy, or omission was not within the *actual knowledge* of the owner." Ind. Code § 32-21-5-11 (2002) (emphasis added).

[14]    Therefore, Fisher's disclosure verified his "CURRENT ACTUAL KNOWLEDGE" of the water and sewer systems and septic fields and tanks, and the statute limited his liability for inaccuracies, errors, or omissions in the disclosure that were not within his actual knowledge. Exhibit Vol. pp. 12-13. In *Johnson v. Wysocki*, 990 N.E.2d 456, 466 (Ind. 2013), our Supreme Court held that the seller may be liable for fraudulent misrepresentations made on the disclosure form if he or she had *actual knowledge* that the representation was false at the time he or she completed the form. (emphasis added).

[15] The trial court's findings regarding this disclosure form are supported by the record. Fisher was aware of the water meter cover in the yard, and paid the utility bills which contained charges for both city water and sewer. The location of the house within the community in an area where sewer services were available, further supported Fisher's belief that the house was connected to the sewer system and not a septic tank. Under section 11, Fisher would be liable if he knew the house was connected to a septic system, but stated that it was not. However, the statute's unambiguous language does not hold a seller liable for an erroneous disclosure on the form made without actual knowledge of the error. Thus, the trial court correctly concluded that Fisher was not liable under Indiana's Disclosure Statutes because he had no actual knowledge that the house was connected to a septic system when he disclosed that it was not.

[16] Now, for the first time on appeal, Harmon argues that the trial court's decision is contrary to law because he established at trial that Fisher committed constructive fraud in his disclosure form responses, the real estate listing, and brochure. Although small claims actions are more informal, as a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue before the trial court. *Tamko Roofing Products, Inc. v. Dilloway*, 865 N.E.2d 1074, 1080 (Ind. Ct. App. 2007). Arguments not presented first to the trial court are waived for appellate review. *Id.*

[17] Nevertheless, the record reveals that the trial court's decision is not contrary to law as suggested by Harmon for reasons we explain below.

[18] "In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them." *American Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010). The five elements of constructive fraud are: "(1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party." *Id.*

[19] For purposes of constructive fraud, the existence of a duty may arise in two ways: (1) the existence of a fiduciary relationship; and, (2) the case of a buyer and seller. *Id.* at 247. Pertinent to this appeal is the buyer and seller relationship. Where there is a buyer and a seller, one party may possess some knowledge not possessed by the other. However, that fact alone does not establish that the party with some knowledge enjoys a position of superiority over the other such that a special duty and a right of reliance are created. *Id.* When allegations of constructive fraud are based on misrepresentations made between a buyer and a seller, no presumption of fraud arises and the plaintiff bears the burden of proving all five elements. *Id.*

[20] In this case to the extent that Harmon seeks recovery based upon the representations in the residential real estate disclosure form, the statute, itself, precludes relief. Indiana Code section 32-21-5-11 is explicit that the owner is

not liable for any error, inaccuracy, or omission required to be delivered under this chapter unless the error, inaccuracy or omission was within the actual knowledge of the owner.

[21] To the extent Harmon argues matters beyond the contents of the disclosure form, we conclude that he has failed to carry his burden of proof.

[22] Harmon seeks recovery founded in equity. "Constructive fraud arises by operation of law from a course of conduct, which, if sanctioned by law would secure an *unconscionable* advantage, irrespective of the actual intent to defraud." *American Heritage Banco*, at 246 (emphasis added). The protection is provided to the unwary and unsuspecting against those who are scheming and calculating, but it does not protect those who stand on equal mental footing and in no fiduciary relationship who fail to exercise common sense and judgment. *Id.* at 248.

[23] Here, the record reflects that Fisher had never lived in the house and held the reasonable belief that the house was on the city sewer system. He was not in possession of knowledge, which Harmon did not possess, such that he enjoyed a position of superiority over him. Indeed, the record reflects that both Harmon and Fisher were surprised to learn that the property located in the middle of the community was connected to a septic system. Thus, the record fails to disclose the necessary element of duty owed to Harmon. Consequently, Harmon's claim, even if adequately preserved, fails.

[24] Affirmed.

Bradford, J., and Brown, J., concur.